The next case this morning is number 19-1913, Carroflon Investments, Ltd. v. Fullbridge, Inc., et al. Thank you. Good morning. Good morning, Your Honor. Thank you. You may please accord Nicholas DeLantis for the plaintiff, Carroflon Investments. With the court's permission, I'd like to reserve three minutes for rebuttal. You may. Thank you. The decision below must be vacated because the judge failed to make findings on issues that were essential to the resolution of the claims for negligent and fraudulent misrepresentation. The judge's errors were two-fold, and they both went to the state-of-mind element of those claims. First, the judge evaluated the defendant's intent as of October 30th of 2015, a date that all the parties to this case appeared to agree was the wrong date. He never evaluated that intent as of the time that Carroflon made its investment in Fullbridge. And what date do you say that is? We say that under the contract, the date was not until the transaction was consummated, which was not until the January 22nd date, which is the date that they advocated. What do you say about the Monier case, which, as I understand it, held that the crucial date is the date of the agreement, not the date, in effect, of the fulfillment or execution, in fact, of the agreement? What do you say about Monier? So the Monier case concerned a financial statement that was presented to a bank. The financial statement was dated as of, I think it was March 31st of that year. And the question that the court decided was, even though this financial statement was given to the bank three months later, that financial statement spoke as of March 31st, which is the date of the financial statement. It was an audited financial statement, so it only could speak of the date that the books were audited. So the Monier case, it looks at, I think, a different question. It wasn't looking at whether that document, which was dated of March 31st, spoke as of any other date. So I think that's a different question. Well, how about even putting aside that case, when I looked at the documents here, it seems your client bound itself to perform under the agreement on November 20th or 23rd or, by the very latest, the 26th. So if that's correct, then I don't see why anything that happened after that date would be relevant unless it showed there was fraud prior to that date. But any new development, so what? That was the risk your client took by binding itself. So to be clear on the dates here, November 20th, that was the date that my client got the documents from Fulbridge, the share purchase agreement, noticed an error, had the error fixed, and sent those documents to their attorneys for review and execution. November 23rd was the date that the executed documents were sent to Fulbridge, and then December 1st was the date that we wired the funds. Okay, but why wasn't on November 23rd, when you send the executed documents, what is there? I've looked at that document. Nothing leapt out at me as saying that your client could back out of the transaction at that point without the permission of the other party. Well, two things. First, I also want to be clear that the judge didn't make any findings about their intent on November 20th or 23rd or December 1st. He made his findings as of October 30th. So everything that happened between October 30th and whatever that cutoff date was... But what is there of significance that happened between the October date and November 23rd? A lot happened. During that time, Kakamal orally told Fulbridge that the scope of Wave 3 would be reduced. On November 9th, Ramon Rivera, which is the Chief Financial Officer of Fulbridge, tells the bank that it has no proof whatsoever of any confirmation by Kakamal that there was a contract. On November 11th, Kakamal, the CEO of Kakamal, Nabil Tugar, writes to Paraflan to say, We're in the final stages of Wave 3 awarding, not that we're going... And it continues, he said, which I expect to be completed by the end of next week. Correct. Correct. Which, again, is inconsistent with the idea that you have a binding contract in August. On November 16th, Fulbridge once again represents to my client that they have a large flywheel contract from the Kingdom of Saudi Arabia with a large new pipeline. And then on November 26th is that reduction in scope email where Kakamal... But that didn't put the question related to events occurring before November 23rd. Right. In my answer... November 26th, last time I looked, wasn't before November 23rd. That is correct. And my answer was between the date that the judge found state of mind and the date of November 23rd. You've mentioned four events, three of which I won't even comment on. But one of them references a telephone call that you say was received by Fulbridge. I can't find any argument made to the district court, to the district judge, that that telephone call was revelatory of intent. Are you referring to the telephone call or the oral statement by Kakamal where the scope was going to be reduced? Right. Right. I mean, that gets to the issue of preservation. I believe this was adequately presented to the judge that everything up until the date of cutoff should be considered. So you think a statement, everything up until the date of cutoff should be considered without calling to the judge's attention, that you mean to include and rely on a particular telephone conversation that never has been mentioned in that context? It was definitely mentioned at trial. In that context, I said. In the context of this goes for the un-tens? That this goes to their knowledge as of November 23rd. Yes. Yes. And Your Honor mentioned the contract. When you say yes, I'm not sure. Are you saying that you did in the proceedings below point out to the judge that November 23rd is the proper date, not October 20? And secondly, between October 20 and November 23rd, there was this phone call, and that is what supports your evidence of intent. So it was part of the first one. Nobody below argued October 30th was the right date. So let's assume you preserve November 23. Did you also preserve the argument that this phone call is the event? I'm pretty confident we did, but I'm not going to stand here and tell you that I can remember. You could send us a 28-J letter in the next couple of days identifying where in the record this was preserved. Sure. We don't want argument. We just want identification of a place in the record or an admission that you can't locate such a place. Absolutely. The shared purchase agreement, Your Honor, did contain an indemnity clause, which required them to identify us if there were any false statements in any of the documents given to us in connection with the... So to the extent we're talking about whether once we sign it we can get out of it, there's that. And then there's just the practical argument that if we didn't wire our funds on first because of a misrepresentation that they made, I don't think any court would tell us that we were bound by that. Right. And I didn't certainly if you signed the documents that bind you, but you did so because of fraud or misrepresentation by the other side, you can get out. But my point was it didn't seem to me that you could get out merely because they had some bad things happen to them after the military... Our position has been that they will take the judge's finding that as of October 30th, they actually subjectively, sincerely believe that there was a contract despite all of the objective evidence of the contract. Our position has been that no reasonable person in their position, having seen all of the documents that they saw, would have thought that they had a $40 million contract with Kavanaugh. And after that October meeting, I'm sorry, that August meeting, there are, and it's in our brief, there are a series of undisputed facts, undisputed emails saying if we can reach an agreement on price, if we can reach that agreement that includes the consistency of production of courses over time, the right mix of courses, the levels of courses, length of courses, if we can agree to all of that, then here's the benchmark price that we're agreeing to, which was something like 17,000 Saudi Arabian Riyals. They wrote that at Takamaw. There's no writing accepting that offer anywhere in the record. And it's inconsistent with the oral testimony that they actually believe that they had this contract. Again, the question is not did it make sense for them as a business matter to start going down the road of preparing these courses to be produced because they thought they would be in a time jam given how long Takamaw takes. The question was, was it reasonable for them to represent to investors that there was a $40 million contract? And I suggest to you that it was not. I don't think there was any, if I read the record correctly, there was no representation that there was a written contract. No, they did not use the word writing. They said there was a $40 million, three-year contract with Takamaw. Now, contract, and Ramon Rivera said, well, I never said there was a written contract. You represented that there was a contract with these people. That is, to any investor, you have something that you can deliver, that this is something enforceable. And they were very clearly wrong about that. And the question before you is, was that reasonable? Thank you, Your Honor. Good morning, Your Honors. And may it please the Court, Lawrence Green representing Amphibolese, Fulbridge, Peter Olson, and Candace Olson. This case was tried as a bench trial before a highly experienced and respected judge. The Court received live testimony from eight witnesses. It considered 201 exhibits and a number of deposition transcripts. Midway through the trial, Judge Stearns dismissed Parafran's contract claim. There's no appeal from that. Following post-trial submissions by the parties, the Court issued a 33-page ruling containing 76 detailed findings of fact, followed by a series of ultimate findings of fact and rulings of law. There's no appeal from the Court's dismissal of the two federal securities claims. We're here just on the two state court claims. This Court, the First Circuit, has repeatedly ruled that questions of negligence decided at a bench trial are to be considered under the clearly erroneous standard. Questions of state of mind, which are essential to the analysis of a fraud claim similarly, are not reviewed de novo. As this Court has stated in federal refinance, Compiano, and other cases, it is the trial court that sees and hears witnesses firsthand. It is the trial court that decides this. And if the account of the evidence is plausible, then this Court, as a court of appeals, may not reverse, even though it might have weighed the evidence differently. Well, you know, I think we just, the argument was just rather narrowed but also sharpened. As I understand it, it's not a question of us overruling fact-finding. The argument is that the judge made a plain error in specifying October 20 as the date. The applicable date should have been November 23rd. That's step one. And step two is between those two dates, events occurred that bear on the issue and the judge didn't take that into consideration because he had the wrong date. Thank you, Your Honor. I'll get right to the heart of the argument. I do agree that that is what is presented. However, counsel is incorrect in stating that the judge only considered Fulbridge's state of mind through October. I call the Court's attention to finding 2B. This is ultimate finding 2B, which appears on page 31 of the Court's decision. It says, to the contrary, Fulbridge itself acted from August through November of 2015, consistent with the belief that it would receive a $40 million award from Kakamo. The Court had said two pages earlier in 1A that in August 2015, Kakamo representatives informed Fulbridge that it had won a $40 million three-year contract. Throughout this first ultimate finding, ultimate finding 1, which goes from 29, and it's ultimate findings 1 and 2, 29 through 31 of the addendum, the Court has no fewer than 36 sub-findings basically supporting all of this. The whole theme of this case was that throughout the three-year history where Fulbridge had dealt with Kakamo, it was before now, paper later. That was the testimony. There was no testimony to the contrary. Judge Stearns, in making 76 findings of fact, pointed to all kinds of evidence to state that there was a contract, that there was an award. Again, in finding 2B, the Court found that Fulbridge acted with a consistent belief through November of 2015, not as counsel says, through October. So there was a very clear weighing of the evidence. The Court then goes on in finding 4 to say, well, we do have this November 26 document, but that's too late. That is after the contract was entered into as stipulated by the parties, and at that point in time, Parafine could not possibly say that it relied on something when it happened after the fact. You just used the phrase as stipulated by the parties. I understand there's a difference between you and your brother about whether there's a stipulation as to what the appropriate date is. What's your view of that? So, Your Honor, the stipulation between the parties was that the parties contracted, contracted as of November 20, it was actually signed on November 23, for this D1 investment to be made. As the panel has just asked as part of its questioning, after that point, Parafine could not back out. This was a binding contract as of that point. But you're not pointing to some separate stipulation in the District Court proceedings. I'm pointing to a stipulation made in the District Court proceedings pre-trial as to when the contract was made and entered into. I would further say, Your Honor, just in further response here, that all along, if you look at the underlying complaint in this case and the way this case was tried, this case was all about the October presentation. That's how the case is pleaded. That's how the case was tried. It was only on appeal that they're now trying to bring in these notions of what happened after the fact. But as I just said, in 2B, the Court is making it very clear here that Fulbridge's subjective state of mind applied through November of 2015. And I now want to use that, Your Honor. But you don't mean through November. You mean up until November 26. Yes. Literally, Your Honor, the Court said through November 2015, but they were mindful of the November 26 date because in the next finding, on the next page, they acknowledge that date. I think the point, Your Honor, is that through November 23, when this was stipulated to, and the Court properly says in finding 4 here, that there was an executed purchase agreement on November 23. Through that date, Fulbridge's state of mind was appropriate. I now want to go, Your Honor, to this second ground of appeal, which is somehow the Court only considered a subjective state of mind as opposed to objective and subjective. And here, Your Honor, I would ask you to review basically all of ultimate finding 1, which starts at page 29 and which basically begins with the notion here that the representation of a $40 million award was not false or misleading. There are 36 sub-findings of that to support that. Then in ultimate finding 2, the defendants did not act with intent to deceive. There are 36 more findings on that. And what these findings all say are specific pieces of evidence that supported Fulbridge's subjective state of mind, but the Court also attended to the question of what should be viewed here as objectively. I call to the Court's attention, we have at finding 2, the defendants, I'm on page 30 of the Court's ruling, addendum page 30 to our brief. Defendants did not act with the intent to deceive or with reckless disregard for the truth. Rather, in October 2015, defendants reasonably believed and had a good faith basis for representing. A court does not make statements about what is reasonable and having a good faith basis without considering what is objectively true. And in making those specific findings, Judge Stearns was saying this is not only an appropriate subjective belief that they had, but they reasonably believed this. They had a good faith basis for believing this. And because of that, Your Honor, we don't believe that there is anything to ground to here, that the Court did consider this both subjectively and objectively. Unless the Court has any further questions for me, we ask that the Court, for the reasons set forth in our brief, affirm the ruling of the lower court and uphold the judgment. Thank you, Your Honor. Your Honor, I just want to make 3 very brief points. On the idea that the district court found that Paraphron, that Fulbright acted reasonably, I mean, I think, as we said in the brief, there are references to reasonableness, but there is no basis, the court has no basis for why it was reasonable. And here I have to rely on the reams of the undisputed evidence that are in the record showing that from August of 2015 through November, nobody, there is no written evidence that there was any contract. In fact, the evidence, all the written evidence, contrary to the testimony I tried, all the written evidence was that there was nothing, that they were trying to figure out whether they could do a deal. On the issue of, that the judge actually, that my brother raised about November, the judge's decision is very clear when he finds that, what the defendants objectively believed, and it is always tied to at the time the representation was made, which was October. He references the November 26th email, but he said that that's not relevant because the decision to invest had already been made a month earlier. There was no evidence that any decision to invest was made in October. That's what the judge found. And then the stipulation that we entered into, I think the argument in the brief is clear enough that nobody understood that stipulation to mean, as my brother has said, that evidence after November 20th was irrelevant. It was very clearly relevant as we argued the law. It would be relevant to the extent it bore on whether prior to November 23rd there had been some misrepresentation or unreasonable statement. If on November 24th the Saudis said, canceled the whole thing, you would have been out of luck, unless you could prove that the other side should have seen that coming before November 23rd. I think that's right. I think our argument is that by the cutoff date, Your Honor mentioned November 23rd, we've clearly advocated for a later date, but let's just take November 23rd. The argument is that as of that date, if they didn't know, then they should have known that there was no contract. And the farther in time you go from August of 2015, the less likely it is that there was any contract. The problem you then have, though, and I think you've captured it precisely, but the problem you have is we have a fact finding that they didn't know and they reasonably believed otherwise, and that's your challenge. That's the challenge, and when does that speak of? I don't think he spoke as of November 23rd. I think it's very clear it was at the time the representation was made, and that's the question in front of you. Thank you.